COMMODITY FUTURES TRADING
COMMISSION, Plaintiff,

v.

BRITISH AMERICAN COMMODITY
OPTIONS CORP., Defendant.

No. 76 Civ. 3247.

United States District Court,
S. D. New York.

Oct. 20, 1976.

Charles Harris, Leslie Blau, New York City, for plaintiff Commodity Futures Trading Commission.

Charles Hecht, Gusrae, Greene & Kaplan, New York City, for defendant; Bert Gusrae, New York City, of counsel.

## OPINION

GAGLIARDI, District Judge.

Plaintiff Commodity Futures Trading Commission ("CFTC") moves by order to show cause for a preliminary injunction, pursuant to Rule 65, Fed.R.Civ.P., to enjoin defendant British American Commodity Options Corp. ("British American") from making use of the mails or any means or instrumentality of interstate commerce in violation of Section 4m of the Commodity Exchange Act, as amended ("the Act"). 7 U.S.C. § 6m.[1] In a decision read into the record on October 6, 1976 (Appendix A), the court denied defendant's cross-motion to dismiss the action pursuant to Rule 12(b)(1), (2) and (6), Fed.R.Civ.P., for lack of jurisdiction and for the failure of the complaint to state a claim upon which relief can be granted and, pursuant to Rule 65, Fed.R. Civ.P., ordered an evidentiary hearing on the preliminary injunction motion which was held on the same day. After plaintiff CFTC rested its case defendant British American moved for a directed verdict pursuant to Rule 50 Fed.R.Civ.P. The court reserved decision on the motion. For the reasons stated herein, the court directs a verdict for the defendant and denies plaintiff's motion for a preliminary injunction.

At the evidentiary hearing plaintiff introduced evidence solely on the issue of whether the defendant qualified as a "commodity trading advisor" under Section 2(a) of the Act, 7 U.S.C. § 2,[2] and therefore was required to register with the CFTC under Section 4m of the Act, *supra*. This evidence was adduced through eight witnesses whose testimony was limited solely to showing that employees of British American gave advice over the phone on commodity options as an investment vehicle and mailed explanatory pamphlets to customers and potential customers.

---

1. 7 U.S.C. § 6m. *Same; use of mails or other means or instrumentalities of interstate commerce*

    It shall be unlawful for any commodity trading advisor or commodity pool operator, unless registered under this chapter, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such commodity trading advisor or commodity pool operator: *Provided*, That the provisions of this section shall not apply to any commodity trading advisor who, during the course of the preceding twelve months, has not furnished commodity trading advice to more than fifteen persons and who does not hold himself out generally to the public as a commodity trading advisor.

2. 7 U.S.C. § 2 . . . The term "commodity trading advisor" shall mean any person who, for compensation or profit, engages in the business of advising others, either directly or through publications or writings, as to the value of commodities or as to the advisability of trading in any commodity for future delivery on or subject to the rules of any contract market, or who for compensation or profit, and as part of a regular business, issues or promulgates analyses or reports concerning commodities; but does not include (i) any bank or trust company, (ii) any newspaper reporter, newspaper columnist, newspaper editor, lawyer, accountant, or teacher, (iii) any floor broker or futures commission merchant, (iv) the publisher of any bona fide newspaper, news magazine, or business or financial publication of general and regular circulation including their employees, (v) any contract market, and (vi) such other persons not within the intent of this definition as the Commission may specify by rule, regulation, or order.

The only other relevant testimony introduced at the hearing, in the form of exhibits, was the "commodity trading advisor" registration application of British American filed in March 1976 and other exhibits relating to the status of the administrative law proceeding.

The CFTC has brought this preliminary injunction motion pursuant to the authority granted in Section 6c of the Act, 7 U.S.C. § 13a–1, which provides that:

> Whenever it shall appear to the [CFTC] that any . . . person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of this chapter or any rule, regulation, or order thereunder, . . . the [CFTC] may bring an action in the proper district court of the United States . . . to enjoin such act or practice, or to enforce compliance with this chapter, or any rule, regulation or order thereunder . . . .. Upon a proper showing, a permanent or temporary injunction . . . shall be granted without bond.

In all material respects this provision is identical to the injunctive provision in the Securities Act of 1933, § 20(b), 15 U.S.C. § 77t(b) and in the Securities Exchange Act of 1934, § 21(e), 15 U.S.C. § 78u(e). Accordingly, case law developed under the injunctive provisions of the securities laws is pertinent to the case at bar. *CFTC v. J. S. Love & Associates Options, Ltd.*, ¶ 20,198, CCH Comm.Fut.L.Rptr. at 21,106–07 (S.D. N.Y.1976).

CFTC enforcement actions seeking injunctive relief, like Securities and Exchange Commission ("SEC") actions, are not governed by the criteria that apply in private injunction suits. *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975). Proof of irreparable injury or the inadequacy of other remedies as in a private injunction suit is not required. *Id.*; III L. Loss, Securities Regulation 1979 (1961, Supp.1969). However, the issuance of an injunction is always subject to the principles of equitable discretion. *Hecht Co. v. Bowles*, 321 U.S. 321, 328–30, 64 S.Ct. 587, 88 L.Ed. 754 (1944); *SEC v. Texas Gulf*

*Sulphur*, 312 F.Supp. 77, 87 (S.D.N.Y.1970), *aff'd in part and rev'd in part*, 446 F.2d 1301 (2d Cir.), *cert. denied*, 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971). Section 6c of the Act requires that "a proper showing" be made before a preliminary injunction "shall be granted". Such language affords no sufficient basis for concluding that Congress meant special weight to be given the CFTC's decision to institute suit. *See SEC v. Frank*, 388 F.2d 486, 491 (2d Cir. 1968). As stated by the Second Circuit Court of Appeals in *SEC v. Management Dynamics*, 515 F.2d at 808 (citations omitted):

> We scarcely mean to imply that judges are free to set to one side all notions of fairness because it is the SEC, rather than a private litigant, which has stepped into court. . . . "[I]n deciding whether to grant injunctive relief, a district court is called upon to assess all those considerations of fairness that have been the traditional concern of equity courts." *See CFTC v. J. S. Love Assoc., supra* at 21,107.

If Congress had intended that the courts refrain from exercising their sound discretion in equity jurisdiction, it would have had to say so in unequivocal language in the Act. *See Hecht Co. v. Bowles, supra* 321 U.S. at 327–29, 64 S.Ct. 587; *SEC v. Frank, supra* at 491. In deciding whether to grant a preliminary injunction in this case:

> "The only question presented at this stage of the proceedings, namely an application for a preliminary injunction in advance of a trial upon the merits, [before the administrative law judge] is whether a violation . . . has been so clearly established that defendants are, in effect, to be found at fault without awaiting the development of all the facts upon a trial." *SEC v. Capital Gains Research Bureau, Inc.*, 306 F.2d 606, 608 (2d Cir. 1962) (en banc), *rev'd on other grounds*, 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963); *see SEC v. Management Dynamics, supra* at 807 n. 1.

While the facts presented at the hearing in this case indicate, for the limited purpose

of this preliminary injunction motion, that British American qualifies as a "commodity trading advisor",[3] this conclusion alone is not enough to grant CFTC's preliminary injunction. Under Section 4m of the Act, if British American is a "commodity trading advisor" it must register with the CFTC to do business. However, British American did file a registration application in March 1976. CFTC asserts that it rejected British American's application on April 16, 1976; that Section 4m of the Act prohibits doing business while unregistered; and that, therefore, this court must grant a preliminary injunction prohibiting British American from doing business.

CFTC's argument ignores the equity discretion of this court, and its logic falls upon a closer examination of the Act and CFTC's actions against British American. The Act generally provides for automatic registration of applicants with the CFTC upon the expiration of a thirty-day period after an application is filed. Section 4n(2) of the Act, 7 U.S.C. § 6n(2);[4] *see* Appendix A at 671. Even in those situations where the CFTC decides that registration should be denied, in almost all cases such denial can only come after an opportunity for a hearing. *See* Section 4n(7) and 8a(2) of the Act, 7 U.S.C. §§ 6n(7)[5] & 12a(2).[6] In one situation, where a person is subject to an out-

---

**3.** British American contests that it is a "commodity trading advisor" and filed its registration application without conceding that the CFTC had jurisdiction over its activities. *See* Appendix A at 668–669. This issue must be finally determined in the administrative proceeding and the finding in the case at bar in no way prejudges the merits of British American's claim.

**4.** 7 U.S.C. § 6n(2) Except as hereinafter provided, such registration shall become effective thirty days after the receipt of such application by the Commission, or within such shorter period of time as the Commission may determine.

**5.** 7 U.S.C. § 6n(7) The Commission after hearing may by order deny registration, revoke or suspend the registration of any commodity trading advisor or commodity pool operator if the Commission finds that such denial, revocation, or suspension is in the public interest and that—

(A) the operations of such person disrupt or tend to disrupt orderly marketing conditions, or cause or tend to cause sudden or unreasonable fluctuations or unwarranted changes in the prices of commodities;

(B) such commodity trading advisor or commodity pool operator, or any partner, officer, director, person performing similar function or controlling person thereof—

(i) has within ten years of the issuance of such order been convicted of any felony or misdemeanor involving the purchase or sale of any commodity or security, or arising out of any conduct or practice of such commodity trading advisor or commodity pool operator or affiliated person as a commodity trading advisor or commodity pool operator; or

(ii) at the time of the issuance of such order, is permanently or temporarily enjoined by order, judgment or decree of any court of

competent jurisdiction from acting as a commodity trading advisor, commodity pool operator, futures commission merchant, or floor broker, or as an affiliated person or employee of any of the foregoing, or from engaging in or continuing any conduct or practice in connection with any such activity or in connection with the purchase or sale of commodities or securities; or

**6.** 7 U.S.C. § 12a. *Registration of commission merchants and brokers; fees; rules and regulations; publication of harmful acts; disapproval of bylaws, etc.*

The Commission is authorized—

(2) to refuse to register any person—

(A) if the prior registration of such person has been suspended (and the period of such suspension shall not have expired) or has been revoked;

(B) if it is found, after opportunity for hearing, that the applicant is unfit to engage in the business for which the application for registration is made, (i) because such applicant, or, if the applicant is a partnership, any general partner, or, if the applicant is a corporation, any officer or holder of more than 10 per centum of the stock, at any time engaged in any practice of the character prohibited by this chapter or was convicted of a felony in any State or Federal court, or was debarred by any agency of the United States from contracting with the United States, or the applicant willfully made any material false or misleading statement in his application or willfully omitted to state any material fact in connection with the application, or (ii) for other good cause shown; or

(C) in the case of an applicant for registration as futures commission merchant, if it is found after opportunity for hearing that the applicant has not established that he meets the minimum financial requirements under section 6f of this title: *Provided,* That pend-

standing order under the Act denying trading privileges or revoking registration, registration can be denied without ever providing for a hearing. Section 4n(6) of the Act, 7 U.S.C. § 6n(6).[7] Finally, under three special situations, the Act allows registration to be denied prior to a final determination in the administrative proceeding.[8] Section 8a(2)(C), *supra* ("Provided, That pending final determination under clause (B) or (C), registration shall not be granted"); *see* Appendix A at 671–672. The first two special situations, conceded by the CFTC not to be at issue in the case at bar, are when minimum financial requirements are not met, Section 8a(2)(C) of the Act, *supra*, and when a person with certain specified interests in the registering corporation has been convicted of a felony or has committed other specified acts. Section 8a(2)(B)(i) of the Act, *supra*.

CFTC assertedly denied British American's registration and brings this preliminary injunction action pursuant to the third special situation, Section 8a(2)(B)(ii) of the Act:

> The [CFTC] is authorized . . . to refuse to register any person . . . if it is found, after opportunity for hearing, that the applicant is unfit to engage in the business for which the application for registration is made . . . (ii) for other good cause shown. *See* Appendix A at 671–672.

CFTC asserts that because it found "other good cause" and denied British American's registration, this court must grant a preliminary injunction denying British American the opportunity to do business pending the final determination of the administrative hearing on whether British American is fit to be registered as a "commodity trading advisor".

Such an automatic result is contrary to the equity discretion of this court and is too harsh a result for British American. At the hearing before this court CFTC offered no evidence to support its finding of "good cause shown" and no evidence as to why the public interest requires prohibiting British American from doing business pending the final determination of the administrative proceeding. CFTC did not allege nor offer any proof that British American defrauded or misled its customers or in any way conducted its business illegally or unethically.

The only indication in the record of CFTC's reasons for denying British American's registration are two outstanding consent decrees with the SEC against the principal owner of British American, John Forma.[9] No background leading up to the entering of these decrees nor any evidence of past illegal behavior of John Forma were offered. While the court expresses no opinion as to whether these consent decrees are grounds for a final determination of unfitness to be registered, these bare consent decrees, without any indication of unfair dealing by British American, do not constitute a "proper showing" for a preliminary injunction prior to the final determination of the administrative proceeding.

The CFTC cites a July 1975 release of "Standards of Denial of Registration" to support its position that an SEC consent

---

ing final determination under clause (B) or (C), registration shall not be granted: *And provided further,* That the applicant may appeal from a refusal of registration under clause (B) or (C) in the manner provided in section 9 of this title; and

7.  7 U.S.C. § 6n(6) The Commission is authorized, without hearing, to deny registration to any person as a commodity trading advisor or commodity pool operator if such person is subject to an outstanding order under this chapter denying to such person trading privileges on any contract market, or suspending or revoking the registration of such person as a commodity trading advisor, commodity. pool operator, futures commission merchant, or floor broker, or suspending or expelling such person from membership on any contract market.

8.  Section 8a(2) of the Act may also in certain instances be violative of constitutional due process. Appendix A at 665–666 n.6.

9.  1. Consent Judgment of Permanent Injunction in 70 Civ. 1743 (S.D.N.Y.) and consents of John Forma and John Forma Securities, Inc.

   2. Consent Judgment of Permanent Injunction in 73 Civ. 643 (S.D.N.Y.) and consents of John Forma and Forma Securities, Inc.

decree is a criterion included in "for other good cause shown" under Section 8a(2)(B)(ii) of the Act. 40 Fed.Reg. 28125 (July 3, 1975). The release, however, only indicates that registration can be denied "for other good cause shown" *"after opportunity for hearing"* (emphasis added).[10] This failure to indicate that "good cause shown" is a grounds for a pre-hearing denial of registration gave British American no notice that by their going into business and applying for registration as "commodity trading advisors" they could not take advantage of automatic registered status at least until an opportunity for a hearing. In an act that generally provides for automatic registration or at least requires a hearing prior to denial of registration, routine pre-hearing injunctions resulting from an expansive use of "other good cause shown" would undercut the intent of the Act.

The CFTC's position that this court must grant a preliminary injunction once CFTC has met its burden of showing British American is a "commodity trading advisor" ignores this court's discretion in equity jurisdiction. *See Hecht Co. v. Bowles, supra,* 321 U.S. at 327–30, 64 S.Ct. 587; *SEC v. Management Dynamics, supra* at 807–09. A critical question in granting an injunction is whether "there is a reasonable likelihood that the wrong will be repeated." *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1100 (2d Cir. 1972); *see SEC v. Management Dynamics, supra* at

807. Here the mere continuation of business after the CFTC has found "good cause" to deny registration is not the necessary repetition of a wrong to grant an injunction. Rather, there must be some indication that a wrong connected with fraud or misconduct, herein related to the alleged activity that led up to the consent decree, is to be repeated. The CFTC introduced no evidence of any illegal behavior of John Forma either leading up to the consent decree or repeated with British American. Absent such repetition, a preliminary injunction cannot be granted under the facts of this case.

The court in its discretion in deciding upon the requested preliminary injunction must balance the public interest against the private interest of British American. On one side, "[i]n the formulation of its discretion [the court] recognize[s] that the public interest, when in conflict with private interest, is paramount." *SEC v. Culpepper,* 270 F.2d 241, 250 (2d Cir. 1959); *see SEC v. Management Dynamics, supra* at 809 n. 5. However, "[t]he adverse effect of an injunction upon defendants is, of course, a factor to be considered." *SEC v. Broadwall Securities, Inc.,* 240 F.Supp. 962, 967 (S.D.N.Y.1965); *see SEC v. Harwyn Industries Corp.,* 326 F.Supp. 943, 957 (S.D.N.Y.1971); *CFTC v. J. S. Love & Assoc., supra* at 21,107.

**10.** CFTC "Standards for Denial of Registration", 40 Fed.Reg. 28125–26:

. . . However, other provisions in section 8a(2) are not so specific, such as the authority *after opportunity for hearing* to deny registration for having engaged in a practice of the character prohibited by the Act. In addition, the Commission is authorized, *after opportunity for hearing,* to deny registration if "for other good cause shown", the applicant is unfit to engage in the business for which he has made application for registration. These criteria are not specific and need Commission interpretation. The Commission has interpreted "for other good cause shown" to include the following:

\* \* \* \* \* \*

(ii) At the time of the application is permanently or temporarily enjoined by order, judgment or decree of any court of competent jurisdiction, or by agreement or settlement to which the Commission or the *Securities and Exchange Commission* is a party from acting as a commodity trading advisor.

\* \* \* \* \* \*

This interpretation regarding "for other good cause shown" is not exclusive; i. e., there may be other instances for which the Commission, *after opportunity for hearing,* may determine to deny registration. (emphasis added)

In this case British American since October 1975 has built up a business with approximately one hundred employees, one million dollars in net worth,[11] and close to two thousand customers. Enjoining it from doing business until a final determination of the administrative proceeding now set for a hearing before the administrative law judge on November 15, 1976 would be too harsh a result.[12] If the administrative law judge decides after a full hearing on the merits that British American is fit to be registered, a prior preliminary injunction would in the short time prior to that final determination have irreparably injured British American's business, forcing their employees out of work. British American's customers would also be hurt. British American does not charge when a customer closes out its transaction. With British American out of business, its customers would have to pay another dealer to close out their options. If the administrative proceeding results in a final determination denying registration, the finding would put British American out of business. In the interim, British American, with no evidence that it is mistreating or misleading its customers or the general public does no apparent harm to the public interest by being allowed to do business. The purposes that would be served by issuance of a preliminary injunction are outweighed by the "harmful impact on the personal reputation . . . and legitimate business activities"

of British American. *SEC v. Harwyn Industries, supra* at 957; *see CFTC v. J. S. Love & Assoc., supra* at 21,107.

After consideration of the record, testimony at the hearing and other circumstances, the court concludes in the exercise of its discretion that a preliminary injunction against British American is unwarranted. As a result, the court grants defendant's request for a directed verdict. This decision is in no way an indication on the merits of the issues to be decided before the administrative law judge.

The foregoing constitutes the court's finding of fact and conclusions of law as required by Rule 52(a) Fed.R.Civ.P.

So Ordered.

### APPENDIX A

Plaintiff Commodity Futures Trading Commission ("CFTC") moves for a preliminary injunction to enjoin defendant British American Commodity Options Corp. ("British American") from making use of the mails or any means or instrumentality of interstate commerce in violation of Section 4m of the Commodity Exchange Act, as amended ("the Act"). 7 U.S.C. Section 6m.[1] The defendant cross-moves to dismiss the action pursuant to Rule 12(b)(1), (2) and (6) Federal Rules of Civil Procedure, for lack of jurisdiction and for the failure of the complaint to state a claim upon which relief can be granted.

---

**11.** Affidavit of John Forma in Opposition to Plaintiff's Request for a Preliminary Injunction, p. 2 (August 6, 1976).

**12.** The CFTC waited until July 22, 1976 to bring its preliminary injunction action. If CFTC's allegations are correct, an action could have been commenced shortly after it learned that British American had started doing business unregistered in October 1975 and before British American had developed its sales force and its clientele to its present strength. CFTC even chose to wait an additional three months after April 16, 1976, the date it acted pursuant to Section 8a(2)(B) of the Act to deny British American's application, to bring this action.

**1.** 7 U.S.C. § 6m. *Same; use of mails or other means or instrumentalities of interstate commerce*

It shall be unlawful for any commodity trading advisor or commodity pool operator, unless registered under this chapter, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such commodity trading advisor or commodity pool operator: *Provided,* That the provisions of this section shall not apply to any commodity trading advisor who, during the course of the preceding twelve months, has not furnished commodity trading advice to more than fifteen persons and who does not hold himself out generally to the public as a commodity trading advisor.

This court has jurisdiction under Section 6c of the Act, 7 U.S.C. Section 13a–1,[2] where the defendant transacts business within this district or where alleged violations of the Act have occurred within this district. For the reasons stated herein, the court denies defendant's motions to dismiss and orders an evidentiary hearing to determine whether British American should be enjoined from doing business as a commodity trading advisor pending the conclusion of the administrative proceeding now ongoing.

Plaintiff CFTC is a duly constituted independent regulatory agency of the United States of America which, since April 21, 1975, has been charged with the responsibility for administering and enforcing the various provisions of the Act. 7 U.S.C. Section 1 *et seq.* Defendant British American, incorporated under the laws of the State of New York in October 1975, is engaged in the purchase and sale of London Commodity options, which are options to purchase certain commodity futures contracts.

This court heard oral argument on all of the motions in this case on September 24, 1976. Certain facts, necessary to the determination of the motions in this case, were stipulated to by the parties on the record or in their papers submitted to the court. These facts are set forth in chronological order. On or about March 3, 1976 the Division of Enforcement of the CFTC orally advised the defendant that it was the CFTC's position that defendant qualified as a "commodity trading advisor" under Section 2(a) of the Act, 7 U.S.C. Section 2,[3] and should register with the CFTC as required by Section 4m of the Act, *supra.* Thereafter, on March 17, 1976, British American, without conceding that the CFTC had jurisdiction over its activities, filed an application for registration on Form CFTC 5–R. The application was returned with a request for additional biographical data. The application was resubmitted on March 23, 1976. On April 16, 1976 the CFTC filed a "Complaint and Notice of Hearing pursuant to Section 4n(7) and 8a(2) of the Commodity Exchange Act, as amended." 7 U.S.C. Sec-

**2.** 7 U.S.C. § 13a—1. *Action to enjoin or restrain violations; compliance; writs and orders; jurisdiction and venue; process*

Whenever it shall appear to the Commission that any contract market or other person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of this chapter or any rule, regulation, or order thereunder, or is restraining trading in any commodity for future delivery, the Commission may bring an action in the proper district court of the United States or the proper United States court of any territory or other place subject to the jurisdiction of the United States, to enjoin such act or practice, or to enforce compliance with this chapter or any rule, regulation or order thereunder, and said courts shall have jurisdiction to entertain such actions: *Provided,* That no restraining order or injunction for violation of the provisions of this chapter shall be issued ex parte by said court. Upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond.

\* \* \* \* \* \*

Any action under this section may be brought in the district wherein the defendant is found or is an inhabitant or transacts business or in the district where the act or practice occurred, is occurring, or is about to

occur, and process in such cases may be served in any district in which the defendant is an inhabitant or wherever the defendant may be found. . . .

**3.** 7 U.S.C. § 2

\* \* \* \* \* \*

The term "commodity trading advisor" shall mean any person who, for compensation or profit, engages in the business of advising others, either directly or through publications or writings, as to the value of commodities or as to the advisability of trading in any commodity for future delivery on or subject to the rules of any contract market, or who for compensation or profit, and as part of a regular business, issues or promulgates analyses or reports concerning commodities; but does not include (i) any bank or trust company, (ii) any newspaper reporter, newspaper columnist, newspaper editor, lawyer, accountant, or teacher, (iii) any floor broker or futures commission merchant, (iv) the publisher of any bona fide newspaper, news magazine, or business or financial publication of general and regular circulation including their employees, (v) any contract market, and (vi) such other persons not within the intent of this definition as the Commission may specify by rule, regulation, or order:

tions 6n(7)[4] and 12a(2).[5] The Complaint alleged that the defendant is unfit to be registered as a commodity trading advisor. The final determination of this question was referred to an administrative law judge and a prehearing conference is scheduled to take place before Administrative Law Judge Hunt on October 8, 1976. The CFTC in the Complaint stated that it deemed it appropriate not to grant registration to the defendant pending final determination of the administrative hearing. The instant claim was instituted here in this court by order to show cause on July 22, 1976.

At the outset, the defendant British American's motions to dismiss the CFTC's action must be denied in all respects. The doctrine of primary jurisdiction has no application to this motion for a preliminary injunction. The pendency of an administrative proceeding is irrelevant. CFTC specifically seeks to enjoin the defendant from doing business pending the final determination of the administrative proceeding. Section 6c of the Act, *supra,* allows the CFTC to bring such an action in federal court and the specific language of the Act, as described in detail below, allows the CFTC to act before the administrative proceeding is completed. See Section 8a(2)(B) and (C) of the Act, *supra.* As set forth below, until British American is registered it is prohibited by the Act from doing business as a commodity trading advisor. Because of the CFTC's action under Section 8a(2) of the Act, British American cannot be registered unless and until after a hearing its fitness to be registered is determined. This action only seeks to preliminarily enjoin the defendant until there is a final determination in that hearing. If it is in the public interest to stop British American from doing business, CFTC need not wait, while the unregistered defendant makes unauthorized transactions, until the administrative hearing is complete. As such, on the face of its complaint, the CFTC has stated a cause of action.

4. 7 U.S.C. § 6n (7) The Commission after hearing may by order deny registration, revoke or suspend the registration of any commodity trading advisor or commodity pool operator if the Commission finds that such denial, revocation, or suspension is in the public interest and that—
   (A) the operations of such person disrupt or tend to disrupt orderly marketing conditions, or cause or tend to cause sudden or unreasonable fluctuations or unwarranted changes in the prices of commodities;
   (B) such commodity trading advisor or commodity pool operator, or any partner, officer, director, person performing similar function or controlling person thereof—
   (i) has within ten years of the issuance of such order been convicted of any felony or misdemeanor involving the purchase or sale of any commodity or security, or arising out of any conduct or practice of such commodity trading advisor or commodity poor operator of affiliated person as a commodity trading advisor or commodity pool operator; or
   (ii) at the time of the issuance of such order, is permanently or temporarily enjoined by order, judgment or decree of any court of competent jurisdiction from acting as a commodity trading advisor, commodity pool operator, futures commission merchant, or floor broker, or as an affiliated person or employee of any of the foregoing, or from engaging in or continuing any conduct or practice in connection with any such activity or in connection with the purchase or sale of commodities or securities; or

5. 7 U.S.C. § 12a. *Registration of commission merchants and brokers; fees; rules and regulations; publication of harmful acts; disapproval of bylaws, etc.*
   The Commission is authorized—
   \* \* \* \* \* \*
   (2) to refuse to register any person—
   (A) if the prior registration of such person has been suspended (and the period of such suspension shall not have expired) or has been revoked.
   (B) if it is found, after opportunity for hearing, that the applicant is unfit to engage in the business for which the application for registration is made, (i) because such applicant, or, if the applicant is a partnership, any general partner, or, if the applicant is a corporation, any officer or holder of more than 10 per centum of the stock, at any time engaged in any practice of the character prohibited by this chapter or was convicted of a felony in any State or Federal court, or was debarred by any agency of the United States from contracting with the United States, or the applicant willfully made any material false or misleading statement in his application or willfully omitted to state any material fact in connection with the application, or (ii) for other good cause shown; or . . .

The Commodity Futures Trading Commission Act of 1974 authorizes the CFTC to seek injunctive relief in the appropriate United States District Court to enjoin violations of provisions of and rules promulgated under the act and to enforce compliance with the Act. Section 6c of the Act, *supra.* This court, before it can grant the requested preliminary injunction, must first review the CFTC's actions to determine whether they comply with the requirements of the Act. If the court finds that the CFTC's actions are in compliance with the Act, it must then, in accordance with the standards established in this Circuit, set the matter down for an evidentiary hearing, as it is doing today, to independently judge the need for a preliminary injunction. And the appropriate citations are: *SEC v. Management Dynamics,* 2 Cir., 515 F.2d 801, pages 806 and 807; *SEC v. Frank,* 2 Cir., 388 F.2d 486, at pages 491–92; and *CFTC v. J. S. Love & Associates,* 76 Civ. 928, in the Southern District of New York, this year.

The court must first examine the statutory language and relevant legislative history and CFTC rules and regulations. Section 4n(2) of the Act, 7 U.S.C. Section 6n(2), is the starting point of an examination of CFTC's claim that British American is not registered. That section provides as follows:

"Except as hereinafter provided, such registration shall become effective thirty days after the receipt of such application by the Commission, or within such shorter period of time as the Commission may determine."

This automatic registration provision is not affected where the CFTC in accordance with the "as hereinafter provided" language acts within thirty days. In this case a question has arisen as to whether the registration period began on March 17 or March 23, 1976, which is the date of the

amended application. Even with the first date applicable, the CFTC's actions on April 16, 1976 are within the required thirty-day period. Under the CFTC Rules of Practice Chap. 1, Section 10.5, the date of filing is not included in the computation of time. 41 Federal Register 2512, filed on January 16, 1976.

Consequently, the CFTC action is within the thirty days to prevent the automatic registration under Section 4n(2) of the Act.

A careful examination of the statute shows that CFTC's actions on April 16, 1976 satisfy the "as hereinafter provided" exception to 4n(2). First, while the Act is unclear as to whether the "as hereinafter provided" language applies only to Section 4n or to the entire Act, the legislative history makes it clear that the language means "as provided elsewhere in the Act." Senate Report, No. 93–1131, 93rd Cong.2d Sess. Section by Section Analysis, Section 205 (1974); U.S.Code Cong. & Admin.News 1974, p. 5843.

The CFTC therefore properly alleges that it is acting pursuant to Section 8a(2) of the Act, *supra.* Specifically, under Section 8a(2)(B)(ii) of the Act, the CFTC is:

[A]uthorized to refuse to register any person . . . if it is found after opportunity for hearing, that the applicant is unfit to engage in the business for which the application for registration is made, . . . (ii) for other good cause shown.

While this language appears to require a hearing prior to the denial of registration, Section 8a(2)(C) of the Act specifically states: "Provided, That pending final determination under clause (B) or (C), registration shall not be granted." The initial decision not to grant registration can be made by the CFTC prior to any hearing being required.[6] This clear meaning of the

---

6. The statutory language covering the requirement and timing for a hearing under the Commodity Exchange Act, as amended, is very different from the more specific language in other regulatory acts. For example, Section 11 of the Securities Exchange Act, as amended, 15 U.S.C. § 78*o* (1975), specifically requires that a

registration hearing for brokers and dealers be held and concluded within 120 days of the date of filing the application for registration (to be extended up to 90 additional days for good cause). 15 U.S.C. § 78*o*(b)(1)(B). While the CFTC's failure to hold a timely hearing is not a violation of the Commodities Exchange Act, it

Act is reinforced in the legislative history, which states:

In determining whether to register an applicant for a full period, the Commission may refuse to grant such registration for any of the reasons specified in Section 8a(2) of the Commodity Exchange Act, as amended, and the Commission may do so "pending final determination" as provided in that section. Senate Report No. 94–73, 94th Cong. 1st Sess. 5 (1975).

Once CFTC determined that British American is a "commodity trading advisor" and denied its application for registration for what it determined to be "good cause shown," CFTC could properly allege that British American's use of the mails or any means or instrumentality of interstate commerce in connection with its business as a commodity trading advisor was in violation of Section 4m of the Act, *supra*. The CFTC could properly bring an injunctive proceeding in this court to restrain such use of the mails or interstate commerce pending a final determination of the administrative proceeding. Section 6c of the Act, 7 U.S.C. Section 13a–1. This court must determine if there are proper grounds for granting a preliminary injunction in this case and accordingly is prepared to proceed with the evidentiary hearing.

It is so ordered.

may in some instances be violative of constitutional due process. This court notes, however, that in this case to date there have been no unreasonable delays in the holding of the hearing and because British American has been allowed to trade while not registered, there could in any case be no prejudice due to postponements in the hearing.